IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs February 3, 2004

## STATE OF TENNESSEE v. WILLIAM C. TOMLIN, JR.

**Appeal from the Circuit Court for Williamson County**
**No. II-1101-360      Timothy L. Easter, Judge**

─────────────

**No. M2003-01746-CCA-R3-CD - Filed March 30, 2004**

─────────────

The Defendant, William C. Tomlin, Jr., was convicted by a jury of aggravated burglary and theft over $1,000.  Following a sentencing hearing, the trial court imposed consecutive sentences of fourteen years for the aggravated burglary and ten years for the theft.  In this appeal, the Defendant argues that the trial court erred by denying two evidentiary motions, that the evidence is insufficient to support the convictions, and that the trial court erred in sentencing.  We modify the aggravated burglary sentence to twelve years and affirm the judgments of the trial court in all other respects.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court**
**Affirmed as Modified**

DAVID H. WELLES, J., delivered the opinion of the court, in which JERRY L. SMITH and THOMAS T. WOODALL, JJ., joined.

Douglas P. Nanney, Franklin, Tennessee, for the appellant, William C. Tomlin, Jr.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; Ron Davis, District Attorney General; and Derek K. Smith, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

At about 8:30 on the morning of November 2, 2000, Alice Means left her house in Franklin to go work in the store she and her husband owned.  Her husband, Fred Means, had already left the house.  Between 11:00 and 11:15 that morning, Ms. Means received a telephone call from her housekeeper, Nancy Ranchino.  Ms. Ranchino told her that, when she arrived at the Means' house to clean it, she discovered that the master bedroom had been ransacked.  Ms. Means immediately went home and found that someone had "wrecked" her bedroom.  The drawers of her dresser had been pulled out, clothes were strewn everywhere, and several jewelry containers that had been stored in the dresser drawers were on the floor, empty.  One particular item that Ms. Means described was

a Fossil watch tin that had contained one of her husband's watches. She had kept that tin in a dresser drawer, but she found it empty on the floor. The total value of the items taken from the Means' house was $7,355.

Ms. Means also discovered that the back door of her house was unlocked. She testified that the lock had been tampered with, as though someone had "hit the lock" and "scratched and damaged" it. A spare key to her house was found under the outside ledge of her kitchen window. Apparently the previous owner of the house had alerted the Means to the presence of a spare key, and the Means had searched for it. However, they had been unable to locate it, even though they searched under the ledge of the kitchen window where the key was found after the break-in. Further inspection of the door by police officers revealed that some kind of metal object was broken off in the door lock. Although the door was damaged, it did not appear that the door had been forced open because the tumblers in the lock were not broken.

In July 2000, the Means had the interior of their house painted by Todd Smith. Mr. Smith and his crew returned in October 2000 to paint the exterior of the house. The Defendant had been employed by Mr. Smith as a painter and worked on both jobs at the Means' house. The Defendant and the other painters finished their work on the exterior of the house approximately one week before the break-in.

Ms. Means testified that her home telephone reflected that she had received telephone calls at 10:29 a.m. and 10:36 a.m. on November 2 from a Sherwin-Williams paint store located approximately five minutes from her house. Two of the employees at the Sherwin-Williams store remembered seeing the Defendant in the store on November 2. The store manager, Scott Beasley, testified that he also remembered seeing the Defendant in the store on November 2, and he remembered the Defendant using the store phone on that date. No one else at the Sherwin-Williams store would have had any reason to call the Means' residence.

Detective Rick Hagan of the Williamson County Sheriff's office testified that he dusted the Means' residence for fingerprints. He lifted nine latent fingerprints, one of which he lifted from the Fossil watch tin. Hoyt Phillips, a fingerprint examiner with the Tennessee Bureau of Investigation, testified that he received nine cards containing latent fingerprints lifted from the Means' residence. Only one of those fingerprints was useful for comparison. Mr. Phillips identified the fingerprint lifted from the Fossil watch tin as being from the Defendant's right middle finger.

Detective Hagan interviewed the Defendant as part of his investigation. When Detective Hagan asked the Defendant where he had been on November 2, 2000, he replied that he had been working for a tire store on Dickerson Road in exchange for a discount on a set of tires. However, he was unable to remember the name or address of the store. When the detective told the Defendant that he had been seen at the Sherwin-Williams paint store in Franklin, he answered that he had been in the store to buy a gallon of paint. When the detective confronted the Defendant with the fact that one of the store employees remembered the Defendant using the phone on November 2, he responded that he had used the phone because he was trying to contact his former employer, Todd

Smith, so he called the Means' house looking for him. However, Mr. Smith testified that the Defendant knew his cellular telephone number and his office number, but he had received no messages from the Defendant. He testified further that there was no reason for the Defendant to think he was at the Means' residence on November 2.

At the conclusion of the proof, the jury found the Defendant guilty of aggravated burglary and theft. This appeal followed in due course.

The first issue raised by the Defendant is whether the trial court erred by denying certain evidentiary motions. First, he complains that the fingerprint evidence should have been suppressed because Detective Hagan was initially mistaken about where the latent fingerprint was located, and the tin watch box was not preserved by the police. As part of his investigation, Detective Hagan dusted for fingerprints a soda can that he found in the trash at the Means' house. Ms. Means testified that she emptied the trash when she left on the morning of November 2, and the housekeeper testified that she did not drink a soda that morning. Therefore, Detective Hagan believed that the can had been discarded by the perpetrator. After he dusted the can for fingerprints, he threw it away due to a lack of space in the evidence locker. After Agent Phillips examined the fingerprint samples that were sent to him, he prepared a report that stated that the fingerprint lifted from the "metal can lid" belonged to the Defendant. Detective Hagan assumed that "metal can lid" referred to the soda can. However, the day before the trial began, Detective Hagan learned that "metal can lid" did not refer to the soda can, but to the Fossil watch tin. Detective Hagan promptly reported such to defense counsel, but the watch tin had already been returned to Ms. Means and cleaned. Therefore, there was no possibility that the print remained. Defense counsel moved to suppress the fingerprint evidence. The trial court ruled that, because the Defendant did not move to suppress the print when it appeared that the discarded soda can was the source, he was in no worse position after learning that the watch tin was the source, because it had not been preserved either. The trial court did instruct the jury on the State's duty to preserve evidence.

A trial court's decision to admit or exclude evidence will not be disturbed on appeal absent an abuse of discretion. See State v. James, 81 S.W.3d 751, 760 (Tenn. 2002). To constitute an abuse of discretion, the trial court must have applied an incorrect legal standard or "reached a decision which is against logic or reasoning that caused an injustice to the party complaining." Id. (citations omitted).

Claims regarding the States's duty to preserve possibly exculpatory evidence are governed by State v. Ferguson, 2 S.W.3d 912 (Tenn. 1999). "Generally speaking, the State has a duty to preserve all evidence subject to discovery and inspection under Tennessee Rule of Criminal Procedure 16, or other applicable law." Id. at 917. However, the evidence must be material, which means it "must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonable available means." Id. If the evidence is material and the State failed in its duty to preserve the evidence, there are several factors for the trial court to consider regarding the consequences of the breach, including: the degree of negligence involved; the significance of the

destroyed evidence, considered in light of the probative value and reliability of secondary or substitute evidence that remains available; and the sufficiency of the other evidence used at trial to support the conviction. See id.

In this case, the Defendant has failed to show that the Fossil watch tin appeared to constitute exculpatory evidence or that it was, consequently, material. Even if the tin could be deemed material evidence, the Defendant has failed to show bad faith on the part of the State or that the fingerprint that was lifted from the watch tin is unreliable. Agent Phillips testified that he preferred to receive the actual item from which a fingerprint had been taken, but it was not unusual for him to be given only the lifted print. Furthermore, he testified that a lifted print is either identifiable or it is not; there is no chance of a bad lift resulting in a misidentification. Therefore, the reliability of the fingerprint has not been called into question. We conclude that proceeding to trial without the evidence being preserved by the State did not deprive the Defendant of a fundamentally fair trial. See id. at 914. Therefore, the trial court did not abuse its discretion by refusing to suppress the fingerprint that was lifted from the Fossil watch tin. This issue is without merit.

The Defendant also complains that it was error for the State to discard the soda can because it may have contained saliva that could be tested for DNA. The Defendant did not raise this issue in the trial court either by way of a pretrial Ferguson motion or in the motion for a new trial. Issues may not be raised for the first time in an appellate court. See Lawrence v. Stanford, 655 S.W.2d 927, 929 (Tenn. 1983). Therefore, this issue is waived. Moreover, we cannot conclude that the Defendant's trial was fundamentally unfair because the State did not preserve the soda can for DNA testing. See Ferguson, 2 S.W.3d at 914.

In his final evidentiary issue, the Defendant contends that the trial court erred by refusing to continue the trial in order for Agent Phillips to return to his office, recover his fingerprinting supplies, and dust for fingerprints the spare key that was found beneath the Means' windowsill. Detective Hagan testified that he did not dust the key for prints because he did not believe it was large enough to obtain a usable print. However, Agent Phillips said that it might be possible to obtain a print. He added that with the passage of time, the friction caused by the key moving in the box in which it was stored may have destroyed any print that may have existed. The trial court refused to continue the trial because the Defendant had known about the existence of the key prior to trial, had been granted funds for the appointment of a fingerprint expert, and had not had the key examined.

Again, the decision to admit or exclude evidence is left to the discretion of the trial judge, and will not be disturbed on appeal absent an abuse of that discretion. See James, 81 S.W.3d at 760; Taylor v. State, 814 S.W.2d 374, 377 (Tenn. Crim. App. 1991). Likewise, the decision whether to grant a continuance lies within the trial court's discretion. See State v. Hines, 919 S.W.2d 573, 579 (Tenn. 1995); State v. Russell, 10 S.W.3d 270, 275 (Tenn. Crim. App. 1999). Because the Defendant had an opportunity to have his fingerprint expert examine the key for fingerprints prior to trial, it was not an abuse of discretion for the trial court to refuse to grant a continuance so Agent Phillips could dust the key in front of the jury. See Tenn. R. App. P. 36(a) ("Nothing in this rule

shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonable available to prevent or nullify the harmful effect of an error.") Furthermore, the Defendant has not shown that he was prejudiced by the trial court's denying his motion; Agent Phillips testified that even if it were possible to lift a fingerprint from the key, the print may well have been destroyed over time by the key being stored in the plastic container. This issue is without merit.

The Defendant also argues that the evidence is insufficient to sustain his convictions for aggravated burglary and theft. Tennessee Rule of Appellate Procedure 13(e) prescribes that "[f]indings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the findings by the trier of fact of guilt beyond a reasonable doubt." A convicted criminal defendant who challenges the sufficiency of the evidence on appeal bears the burden of demonstrating why the evidence is insufficient to support the verdict, because a verdict of guilt destroys the presumption of innocence and imposes a presumption of guilt. See State v. Evans, 108 S.W.3d 231, 237 (Tenn. 2003); State v. Carruthers, 35 S.W.3d 516, 557-58 (Tenn. 2000); State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). This Court must reject a convicted criminal defendant's challenge to the sufficiency of the evidence if, after considering the evidence in a light most favorable to the prosecution, we determine that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); State v. Hall, 8 S.W.3d 593, 599 (Tenn. 1999).

On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable and legitimate inferences which may be drawn therefrom. See Carruthers, 35 S.W.3d at 558; Hall, 8 S.W.3d at 599. A guilty verdict by the trier of fact accredits the testimony of the State's witnesses and resolves all conflicts in the evidence in favor of the prosecution's theory. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court will not re-weigh or re-evaluate the evidence. See Evans, 108 S.W.3d at 236; Bland, 958 S.W.2d at 659. Nor will this Court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. See Evans, 108 S.W.3d at 236-37; Carruthers, 35 S.W.3d at 557.

A person commits aggravated burglary who enters a habitation without the consent of the property owner and "commits or attempts to commit a felony, theft or assault." Tenn. Code Ann. § 39-14-402(a)(3), -403(a). "A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." Id. § 39-14-103. The evidence showed that someone entered the Means' house without their consent and stole items valued at $7,355. The issue is whether the proof sufficiently showed that the Defendant was the perpetrator.

Approximately one week before the break-in, the Defendant had been at the Means' residence working as a painter for Todd Smith. Police investigators discovered the Defendant's fingerprint on a Fossil watch tin that had been kept in one of Ms. Means' dresser drawers, but was

found on the floor, empty. Ms. Means testified that there would have been no reason for the Defendant to come in contact with the tin while he was painting.

The Means' caller I.D. indicated that, on the morning of the break-in, two telephone calls were made to the Means' residence from a Sherwin-Williams store, which was located about five minutes from the Means' home. The manager of the store testified that the Defendant had been in the store that morning and had used the telephone. Indeed, the Defendant admitted calling the Means' house from Sherwin-Williams because he was looking for Todd Smith. However, Mr. Smith maintained that there was no reason for the Defendant to think he was there on November 2 because he finished that job a week earlier. Moreover, the Defendant had the numbers to Mr. Smith's office and cell phone, but he had left no messages either place.

We conclude that the evidence is sufficient to support the Defendant's convictions for theft and aggravated burglary beyond a reasonable doubt. This issue is, therefore, without merit.

Finally, the Defendant maintains that the trial court erred in sentencing. The Defendant was convicted of aggravated burglary, a Class C felony, see Tenn. Code Ann. § 39-14-403(b), and theft over $1,000, a Class D felony, see id. § 39-14-105(3). At the sentencing hearing, the trial court determined the Defendant to be a Range III, persistent offender, see id. § 40-35-107(c), a classification the Defendant does not contest. The sentencing range for a persistent offender convicted of a Class C felony is ten to fifteen years, see id. § 40-35-112(c)(3), and eight to twelve years for a Class D felony, see id. § 40-35-112(c)(4). The trial court imposed consecutive sentences of fourteen years for the aggravated burglary and ten years for the theft. The Defendant argues that the trial court erred by refusing to apply the mitigating factor that the Defendant's conduct neither caused nor threatened serious bodily injury, and by ordering his sentences to be served consecutively.

Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; and (f) any statement the defendant wishes to make in the defendant's own behalf about sentencing. See Tenn. Code Ann. § 40-35-210(b); State v. Imfeld, 70 S.W.3d 698, 704 (Tenn. 2002). To facilitate appellate review, the trial court is required to place on the record its reasons for imposing the specific sentence, including the identification of the mitigating and enhancement factors found, the specific facts supporting each enhancement factor found, and the method by which the mitigating and enhancement factors have been evaluated and balanced in determining the sentence. See State v. Samuels, 44 S.W.3d 489, 492 (Tenn. 2001).

Upon a challenge to the sentence imposed, this court has a duty to conduct a de novo review of the sentence with a presumption that the determinations made by the trial court are correct. See Tenn. Code Ann. § 40-35-401(d). However, this presumption "is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts

and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). If our review reflects that the trial court followed the statutory sentencing procedure, that the court imposed a lawful sentence after having given due consideration and proper weight to the factors and principles set out under the sentencing law, and that the trial court's findings of fact are adequately supported by the record, then the presumption is applicable, and we may not modify the sentence even if we would have preferred a different result. See State v. Pike, 978 S.W.2d 904 app. at 926-27. (Tenn. 1998). We will uphold the sentence imposed by the trial court if (1) the sentence complies with the purposes and principles of the 1989 Sentencing Act, and (2) the trial court's findings are adequately supported by the record. See State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401 Sentencing Commission Comments; Arnett, 49 S.W.3d at 257.

At the time of sentencing, the Defendant was forty-eight years old and married. He dropped out of high school after completing the ninth grade. With respect to his employment history, the presentence report merely states that the Defendant had been employed by several automobile body repair companies, though he had been employed as a painter at the time of the instant offenses.

At the sentencing hearing, the State presented the testimony of David Pratt, the probation officer who prepared the presentence report. Mr. Pratt testified that the Defendant had a lengthy history of criminal convictions. Those conviction include: burglary of an automobile, robbery, first degree assault in Nebraska, four counts of aggravated rape, assault with intent to commit rape, possession of a weapon, shooting a missile into a dwelling, and attempted automobile burglary. The Defendant also had several misdemeanor convictions, including possession of burglary tools, leaving the scene of an accident, theft, and DUI. Mr. Pratt also testified that, on November 23, 1982, the Defendant had violated his sentence of probation for an aggravated rape conviction. The Defendant presented no proof at the sentencing hearing.

The trial court enhanced the Defendant's sentences based on the following factors: the Defendant had a previous history of criminal convictions in addition to those necessary to establish him as a persistent offender; the Defendant had a previous history of unwillingness to comply with the conditions of a sentence involving his release into the community; and the Defendant abused a position of private trust or used a special skill that significantly facilitated the offense. See Tenn. Code Ann. § 40-35-114(2), (9), (16). The Defendant does not contest the applicability of the three enhancement factors. The trial court also applied the mitigating factor that the Defendant's conduct "neither caused nor threatened serious bodily injury," id. § 40-35-113(1), but ruled that this mitigating factor only applied to the theft conviction. The court reasoned that the Defendant could not have known for certain whether anyone was home when he burglarized the Means' house.

The Defendant contends that the trial court should have applied the mitigating factor on the aggravated burglary sentence as well. In this case, we conclude that the Defendant is correct in his contention. This Court has previously held that, under appropriate facts, mitigating factor (1) may be applied to a sentence for aggravated burglary. See State v. James Michael Scott, No. M2001-02000-CCA-R3-CD, 2002 WL 31154603, at *6 (Tenn. Crim. App., Nashville, Sept. 20, 2002). In

this case, no one was home when the Defendant burglarized the Means' residence. Although the trial court reasoned that the Defendant could not have been certain that the house was empty, the State's theory at trial was that the Defendant called the Means' house twice from the Sherwin-Williams paint store to ensure that no one was home. Therefore, the Defendant was entitled to mitigation because his conduct neither caused nor threatened serious bodily injury. After weighing the three enhancement factors against the one mitigating factor, the trial judge enhanced the Defendant's sentence for theft by two years. We conclude that a two-year enhancement is appropriate for the aggravated burglary sentence as well. Therefore, we modify the Defendant's sentence for aggravated burglary from fourteen years to twelve years.

Tennessee Code Annotated section 40-35-115 sets forth the criteria for determining whether sentences for multiple convictions shall run consecutively or concurrently. The trial court ordered the Defendant's sentences to run consecutively after determining that the Defendant was an offender with an extensive record of criminal activity. See Tenn. Code Ann. § 40-35-115(b)(2). The record reflects that the Defendant had a lengthy history of criminal convictions extending from 1977 through 2001, which included crimes ranging from misdemeanor theft and DUI to aggravated rape and robbery. The trial court did not err or abuse its discretion by ordering consecutive sentences in this case. This issue is without merit.

The Defendant's sentence for aggravated robbery is modified from fourteen years to twelve years. In all other respects, we affirm the judgment of the trial court.

_____
DAVID H. WELLES, JUDGE